# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

AT JUNE TERM, 1857.

THE STATE, CORNELIUS VAN WINKLE, prosecutor, *vs.* P. S. MASSAKER, Collector of the Township of Manchester, in the County of Passaic.

1. Bonds secured by mortgages on land situate in a township or city wherein the mortgagee does not reside, are not taxable to the mortgagee where he resides; it makes no difference if the land is in a city or place where, by a special law, it is taxed according to its value, without regard to encumbrances, and where bonds and mortgages are not taxed at all.

2. Mortgages on land in the city of Paterson cannot be taxed, whether the mortgagee lives in that city or in some other part of the county.

In error to the Supreme Court.

This cause came before the Supreme Court on *certiorari*, to set aside an assessment of taxes on the personal property of Cornelius S. Van Winkle. The Supreme Court sustained the assessment, (1 *Dutcher* 531) and the prosecutor brought a writ of error, removing the cause to this

564

court. The facts are stated in the report of the case in the Supreme Court, and also appear in the opinion delivered in this court.

*Gledhill* and *Bradley,* for plaintiffs in error.

*Williams* and *Barkalow,* for defendants.

The opinion of the court was delivered by the

CHIEF JUSTICE. Cornelius Van Winkle, the prosecutor, living in the township of Manchester, in the county of Passaic, in the year 1855, was taxed for a large amount of bonds, secured by mortgage upon lands lying in other townships within the state. Of the amount for which he was thus assessed, about $60,000 was secured by mortgage upon lands in Paterson, and about $2000 upon lands lying in other townships. The court held, that so far as the tax upon these bonds secured by mortgage in other townships were actually assessed upon and paid by the mortgagors, the mortgagee was exempt, and the assessment against him was unlawful. But in regard to the bonds secured by mortgage on lands in Paterson, where the mortgage debt was not assessed against the mortgagor, the court held that they were rightfully assessed against the mortgagee. This constitutes the ground of error.

The question presented is whether, by the laws of this state, a party living in one township, and having money secured by mortgage upon lands lying in another township within this state, can be assessed personally in the township where he lives for the amount of such mortgage debt. The answer to this question depends upon the provisions of the act of 1854, (*Nix. Dig.* 801) under which this assessment was made. The sixth and seventh sections of the act prescribe with minute care the place where the personal and real estate of individuals and of corporations shall be assessed. Personal tax is to be assessed

upon each inhabitant liable to such taxation, in the township or ward where he resides at the time of the assessment. Real estate is to be taxed in the township or ward in which it shall lie, except where an occupied farm or lot is divided by a township or ward line, in which case the whole farm or lot shall be taxed in the township or ward where the occupant resides. The personal property of *non-residents* is to be taxed in the township or ward where it is situate. The personal property of corporations shall be taxed where the principal office shall be, or if there be no such office, then where the operations of such company are carried on. Every resident in the state shall be assessed in the township or ward where he resides when the assessment is made, for all personal estate owned by him, wherever situate, provided that when the holder of a mortgage shall not reside in the same township where the mortgaged premises lie, the tax on the money secured by the mortgage shall be assessed against and be paid by the mortgagor in the township where the lands lie, and shall not be assessed against the mortgagee, in the township where he resides. In making these provisions, the legislature were defining as well the rights of taxpayers as of the townships by whom the tax was to be received. They were laying down general rules to guide the assessors in making their assessments. Those rules were designed to be clear, simple, easy of comprehension, and inflexible. They limited the duty of the assessors, in making their assessment, to inquiries which might be made and answered within the limits of their own township. They were not designed to impose upon assessors the duty of looking to other, and perhaps to remote townships of the state, to ascertain whether, in point of fact, the tax has been assessed upon or paid by the mortgagor. That is an inquiry which concerns the township where the mortgaged lands lie. The assessor of the township where the mortgagee resides has discharged his duty when he has ascertained that the mortgage debt which

is sought to be taxed is secured by mortgage upon land lying in another township or county within this state.

It is admitted that this is the clear and obvious meaning of all the provisions of the sixth and seventh sections of the act prescribing where property shall be assessed, except those which relate to mortgage debts. But in regard to these, it is insisted that the place of taxation depends upon circumstances, and that the mortgagee is only exempt from taxation in the township where he resides, in case the tax upon the mortgage debt is, or at least might have been assessed upon and paid by the mortgagor in the township where the lands lie. This construction is sought to be sustained by the language of the second proviso to the seventh section of the act. The phrase "in such case," it is contended, means in case the tax for the mortgage debt is actually assessed against and paid by the mortgagor in the township where the lands lie. A very strict construction of the phrase "in such case" might limit its application to cases where the mortgage debt was not only assessed to and paid by the mortgagor, but where the receipt of the collector was obtained, and the amount actually allowed and deducted from the interest by the mortgagee. But such construction is not contended for. And in regard to the construction claimed by the defendants in error, the remark is obvious, that the second proviso was not designed to alter or qualify the previous enactment, but simply to remove all doubt, and to guard against an assessment against the mortgagee, in cases coming within the first proviso; that the first proviso declares that in all cases where the holder of a mortgage shall not reside in the same township where the mortgaged premises lie, the tax shall be assessed in the township where the lands lie, and consequently, that if the second proviso were stricken from the act, the mortgagee in such case would not be liable to assessment for the mortgage debt. Aside from the language of the statute and the import of the terms used by the legislature,

the extreme inconvenience, if not the absolute impracticability of carrying out the construction contended for on the part of the defendant in error, is a persuasive argument against its adoption.

Upon the construction of the act of 1854, no question could arise, so long as it continued to prevail throughout the state, and the money due on mortgage was actually assessed in the township where the land lay. But by a supplement to the charter of the city of Paterson, passed in 1852, (*Pamph. L.* 540) that city was exempted from the operation of the general tax law of the state, and was subjected to a special system of taxation peculiar to itself. By that act it was, among other things, provided that all lands lying within the city should be assessed at their full value; that in assessing lands, no deduction should be made for mortgage debts, and that, in the schedule of property made taxable against residents in the city, mortgages are omitted. By the operation of this act, money loaned upon mortgage in Paterson is exempt from taxation. The mortgagor pays tax upon the full value of his land, and is entitled to no deduction therefor by the mortgagee. By operation of this law, the money of the prosecutor loaned upon mortgage on lands in Paterson became exempt from taxation in that city. It is insisted, therefore, that he should be taxed in Manchester, inasmuch as, by law, all real and personal estate whatever of citizens of that township (not within specified exemptions) is subject to taxation. But, by the general law of the state, the mortgage debt of the prosecutor was made taxable in Paterson, not in Manchester. And if the inhabitants of Paterson deem it for the interest of their city that capital loaned in the city should be exempt from taxation, on what ground can the township of Manchester complain, or how do they acquire a right to tax the property on the mere ground that Paterson elects not to do it? By the policy of the state law, the mortgagee pays the tax on money loaned, and the land mortgaged is exempt;

but by the supplement to their charter, the citizens of Paterson have virtually said, that is not the true policy for their city. Their manufacturing interests require capital. The prosperity of the city will be promoted by holding out inducements for its investment on city security. Their taxes for paving, grading, and lighting the streets are higher than in the country, and if capital loaned here is subjected to a higher tax than in the adjoining townships, the inevitable effect will be, under the operation of the state law, to drive capital from the city. They are willing, therefore, as borrowers, to pay the tax upon money loaned upon mortgage within the city, and that the lender shall be exempt. Such is the fair import of the city charter, and it is rendered the more emphatic by the fact that it was enacted the year succeeding the general tax law of 1851, which adopted the policy of taxing mortgage debts against the mortgagee, and exempting the land mortgaged from taxation. If, then, the city of Paterson, who by the state law are entitled to the tax upon the money of the prosecutor loaned upon mortgages within the city, find it expedient to release the prosecutor from the payment of that tax, it gives no claim in law or equity for Manchester to claim the right of taxation. The answer to the claim is, that the right to the tax is in Paterson, and if that right is waived or relinquished, it confers no right on Manchester or any other township.

The personal property of every incorporated company liable to taxation is liable to taxation only in the township or ward where its principal office or place of business may be. If an incorporated company, having its office or principal place of business in Paterson, has personal property to the amount of thousands in Manchester or other townships, its taxes for all its personal property are by law payable in Paterson. If, then, the city of Paterson deems it for her interest to relieve such corporation from such tax, and obtains the sanction of the legislature to such end, the company would be relieved entirely from tax,

not only in Paterson, but elsewhere. And if it should be alleged that all the property of the corporation is by law liable to tax somewhere, and not being taxed in Paterson, may be taxed in Manchester, the answer would be, that by the genereal law of the state, all the property of the corporation is subject to taxation only where its principal office is, and being exempt from taxation there, it cannot be taxed elsewhere. The same principle applies as well to the case of the mortgage debts of the prosecutor. They were subject by law to taxation only in Paterson, and, being exempt there, they cannot be taxed in Manchester.

The assessment should be amended, by striking therefrom the amount assessed upon the bonds of the prosecutor secured by mortgage upon lands in the city of Paterson. In regard to the bonds of the prosecutor secured by mortgage upon lands in other townships, and which were clearly exempt from taxation, it does not satisfactorily appear that the prosecutor was taxed for those bonds.

Let the judgment be reversed, and the record be remitted, to be proceeded on according to law.

*For affirmance*—None.

*For reversal*—The CHANCELLOR, the CHIEF JUSTICE, and Judges OGDEN, HAINES, RYERSON, ARROWSMITH, CORNELISON, RILEY, SWAIM, VALENTINE, and WOOD.